**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **COMMODITY FUTURES TRADING,** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 04-2181-D/An** |
| v. | ) | |
| | ) | |
| | ) | |
| **GORDON J. VANDEVELD,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "CFTC") brought suit against Defendants FxTrade Financial, LLC ("FxTrade"), Jeffrey A. Mischler ("Mischler"), Lee N. Romano II, Mary Jo Sibbitt, Ernst H. Behr, Gordon J. Vandeveld ("Vandeveld"), and Reverie LLC (collectively, "Defendants") pursuant to § 6c of the Commodity Exchange Act, ("the Act"), 7 U.S.C. § 13a-1.  Default judgments were entered against all defendants except Vandeveld. On April 11-13, 2007, the Court conducted a bench trial on the merits in this matter. Plaintiff argues that Vandeveld made false representations to potential and actual investors of FxTrade, and that the investments were subsequently misappropriated by Mischler and other defendants.  The investments involved foreign currency futures contracts.  Plaintiff asserts that CFTC is the proper party to pursue suit against the Defendant because the agreements and transactions involve foreign currency futures

1

contracts, 7 U.S.C. § 2(c)(2)(B) and (C).  Moreover, any fraud perpetuated by Vandeveld  in

connection with those agreements and transactions would fall within the jurisdiction of CFTC

pursuant to Section 4b(a)(2) of the Act.  After considering the testimony of the witnesses, exhibits,

and the briefs of the parties, the Court makes the following findings of fact and conclusions of law.

## II.  FINDINGS OF FACT

1.     The CFTC is an independent federal regulatory agency of the United States that is

charged with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C.

§1et seq., and CFTC Regulations, 17 C.F.R. § 1.1 et seq. (2006), promulgated thereunder.

(Stipulation, Joint Pretrial Order at 22.)

2.     FxTrade was a Tennessee limited liability company established on July 11, 2003.

(Id.)

3.     TradeQuest, Inc. (TradeQuest) was incorporated in Tennessee on March 2, 2004

by Jeffrey Mischler and Catherine Mischler with funds from FxTrade's bank account. FxTrade

conducted its business through TradeQuest following entry of the March 17, 2004 *Ex Parte*

Statutory Restraining Order to Freeze Assets, Preserve Books and Records and for an Order to Show

Cause Re Preliminary Injunction. (Id.)

5.     FxTrade has never been registered with the CFTC in any capacity. (Id.)

6.      Mischler has never been registered with the CFTC in any capacity. (Id. at 23.)

7.     Vandeveld has never been registered with the CFTC in any capacity. (Id. at 25.)

8.     From approximately June 2003 through May 2004, representatives of FxTrade,

including Vandeveld, solicited individuals to invest in or otherwise provide funds to FxTrade for

the purported purpose of trading foreign currency futures contracts. (Id.; Pl. Post-Trial Brief at 15

n. 10; 22; Tr. at 784:9-12; 648:20-22.)

9.      Vandeveld made no effort to investigate FxTrade or Mischler prior to soliciting investors and potential investors. (Tr. at 701:18-702:11; 706:20-707:11, 710:6-14; 712-14.)

10.      In an effort to solicit investments, Vandeveld made material misrepresentations to investors and potential investors of FxTrade. (Id. at 15; Tr. at 739:10-13). Vandeveld misrepresented to investor, David Wilson, that FxTrade had been in operation for three years and had 360 clients, each of whom had invested at least $100,000 and had never missed a monthly payment. (Tr. at 536:14-20; 538:11-545; 560:16-18; Wilson's Handwritten Notes, Pl.'s Ex. 17.) Vandeveld misinformed Laura Lee Souza and Elizabeth Hoeschle that his wife had invested in FxTrade. (See Souza Dep. Tr., Pl's Ex. 201 at 55:24-56:2; Hoeschle Testimony Tr. at 123:8-15.) Vandeveld also misinformed Dianne Salam that he had personally invested $200,000 in FxTrade. (Tr. at 161:1-9.)

11.      Vandeveld failed to disclose Mischler's and FxTrade's unsuccessful trading record to investors and potential investors. (Tr. at 675:12-16.)

12.      Vandeveld assured all FxTrade investors and prospective investors that their principal would be guaranteed by a standby letter of credit ("SLC"). (Tr. at 503:15-504:2; 629:24-621:2; 636:7-637:1; 679:15-22; 680:17-681:14; 684:3-15.)

13.      No SLC ever existed in favor of, and for the account of FxTrade as a named beneficiary on the SLC. (Stipulation, Joint Pretrial Order at 27.)

14.       Even though Vandeveld knew as early as February 22, 2004 that FxTrade had yet to obtain a single SLC for any of his clients, he continued to solicit investors for FxTrade. (Tr. at 680:25-681:14.)

15.      Vandeveld solicited the following FxTrade investors and potential investors:

LauraLee Souza, David Wilson, Ronald Vandeveld, Georgene Meagher, Elizabeth Hoeschle, George Criel, Patricia Criel, Donna Duffy, Frank Hays, Janet Hays, Thomas Howell, Jerrald Miler, Lyle Miller, Dianne Salam, Varun Suni, and Dirk Vandeveld.(Pl. Post-Trial Brief at n.10.)

16.    As a result of Vandeveld's misrepresentations regarding Fx Trade, LauraLee Souza invested $80,000; David Wilson invested $200,000; Ronald Vandeveld (Defendant Vandeveld's brother) invested $96,000; and Georgene Meagher invested $200,000. (Id.)

17.    FxTrade investor funds were deposited into various bank accounts of Defendants and relief defendant, Joseph J. Cecala. Jr. ("Cecala"). In total, $25,000 in FxTrade investor funds was deposited into an account held by defendant, Lee N. Romano II at TCF Bank. A total of $296,000 in FxTrade investor funds was deposited into a client trust account held by Cecala at La Salle Bank, N.A. All remaining FxTrade investor funds ($724,500) were deposited into FxTrade's bank account at Am South Bank or FxTrade's account (in the name of TradeQuest) at National Bank of Commerce. (Stipulation, Joint Pretrial Order at 23.)

18.    Although FxTrade received a total of $1,045,500 from all  investors, only $154,025 was deposited into FxTrade's foreign currency trading accounts. (Id.)

19.    Vandeveld received $58,021 as a result of  his customers investments in FxTrade. ( Pl. Post-Trial Brief at 358.)

20.    Investors solicited by Vandeveld lost a total of $576,000. (Id. at 26.)

## III.  CONCLUSIONS OF LAW

4

Plaintiff CFTC alleges that the Defendants made fraudulent misrepresentations and omissions in order to entice investors to invest in FxTrade, and subsequently misappropriated investors' funds.  The Court will analyze Vandeveld's involvement in the matter and will assess his potential liability.

The contested issues of law in this case are (1) whether the Court has subject matter jurisdiction over the action, (2) whether Vandeveld engaged in fraud in violation of Section 4b(a)(2)(I) and (iii) of the Act, and (3) whether remedies are necessary, including injunctive relief, restitution, and payment of civil monetary penalties. These issues are discussed in turn.

**A.  Subject Matter Jurisdiction**

As a threshold issue, the Court must determine if the CFTC has jurisdiction to enforce the transactions involved in this case.  CFTC argues that this Court has jurisdiction over the subject matter of this action pursuant to § 6c of the Act, 7 U.S.C. § 13a-1.  Section 6(c)(a) of the Act authorizes the CFTC to seek injunctive relief against a person when such person is engaged, engaging, or about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder. Furthermore, the CFTC maintains that it has jurisdiction over this matter pursuant to §2(c)(2)(B) and (C) of the Act, 7 U.S.C. §2(c)(2)(B) and (C), which confers upon the CFTC anti-fraud jurisdiction over "an agreement, contract, or transaction in foreign currency that is a contract of sale of commodity for future delivery," and Section 4b(a)(2), 7 U.S.C. § 6b(a)(2), which makes it unlawful to commit fraud in connection with futures transactions.

Vandeveld argues that the transactions involved in this case do not fall under the CFTC's jurisdiction, as they were spot transactions and not futures contracts. Vandeveld asserts that this

Court lacks subject matter jurisdiction over this action because the CFTC does not have the authority to regulate spot transactions under the Act. See Bank Brussels Lambert, S.A. v. Intermetals Corp., 779 F.Supp. 741, 748 (S.D.N.Y. 1991).

The Sixth Circuit has defined a futures contract as "contracts for sale of a commodity for future delivery." CFTC v. Erskine, 2006 WL 1050677 (N.D. Ohio) (quoting The Anderson's Inc. v. Horton Farms, Inc., 166 F.3d 308, 318 (6th Cir. 1998).) A spot transaction is a "transaction for the immediate sale and delivery of a commodity." Id. In determining whether a contract is a spot transaction or a futures contract, the court should focus on whether, "there is a legitimate expectation that physical delivery of the actual commodity by the seller to the original contracting buyer will occur in the future." Id. If there is no legitimate expectation that physical delivery of the actual commodity by seller, then the transaction is most likely a futures contract subject to the CFTC's jurisdiction. Id.

The Sixth Circuit delineated a number of factors courts consider to determine whether legitimate physical delivery of a commodity was expected. First, whether the parties to the contracts were "speculators from the general public" as opposed to individuals in the business of providing or obtaining the commodity. Anderson's Inc, 166 F.3d at 320 (citing In re Grain Land Corp., 978 F.Supp. 1267, 1273-74 (D.Minn. 1997).). Second, whether the parties to the contract had the ability to make and take delivery of the physical commodity. Id. Third, whether the purchaser of the commodity relied on actual delivery of the commodity to carry out its business. Id. Fourth, whether delivery "routinely occur[ed] between the partes in past dealings." See Id. Fifth, whether the seller received "cash payment on the contracts only upon delivery of the actual commodity." See Id

First, FxTrade was a speculator from the general public and did not rely on actual delivery

6

of foreign currency to carry out its business. (Pl's Exhibit Ex. 18) (describing FxTrade's business.) Second, FxTrade was only able to deliver the foreign currency traded out of three of the more than 200 foreign currency transactions in FxTrade's Forex Capital Markets ("FXCM") accounts. Third, FxTrade did not rely on actual delivery of the commodity to carry out its business. This is evidenced by FxTrade's bank records, which indicate that foreign currency was never deposited into any of FxTrade's bank accounts. See FxTrade Am South Bank Records (Pl.'s Ex. 130). Fourth, actual delivery of the foreign currency never occurred in any transactions in this case. See Dingman's Testimony (Tr. at 269:23-270:6); Mischler's Testimony (Tr. at 781:22-25); FXCM Account Statements (Pl.'s Ex. 149). Fifth, FXCM, did not receive "cash payment on the contracts only upon delivery of the actual [foreign currency]." Andersons, Inc. 166 F.3d at 320. Payment was never contingent upon actual delivery of foreign currency. See Dingman Testimony (Tr. at 271:6-9.) It is clear from the record that the investors expected to profit on price fluctuations in the currency and did not anticipate the need of physical delivery of any foreign currency. It is also noteworthy that Vandeveld conceded in the parties' Joint Pretrial Order that the purported purpose of FxTrade was to trade "foreign currency futures contracts." (Joint Pretrial Order at 23.)

For the foregoing reasons, the Court finds that the transactions involved foreign currency futures trades and were not spot transactions. Therefore, CFTC has jurisdiction over this matter. See CFTC v. Calvary Currencies, LLC, 437 F.Supp.2d 453 (D.Md. 2006) (finding foreign currency transactions between investment company and its customers were foreign currency futures trades, and not spot transactions, and thus were subject to CFTC's jurisdiction.)

**B. Fraud**

In order to establish liability for fraud, CFTC has the burden of proving three elements: (1)

the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and

(3) materiality.  CFTC v. R.J. Fitzgerald & Co., Inc., 310 F.3d 1321, 1328 (11th Cir. 2002).[1]

Whether a misrepresentation has been made depends on the "overall message" and the "common

understanding of the information conveyed."  Id.  For purposes of fraud or deceit in an enforcement

action, scienter is established if a defendant intended to defraud, manipulate, or deceive, or if the

defendant's conduct represents an extreme departure from the standards of ordinary care.  See, e.g.

Messer v. E.F. Hutton & Co., 847 F.2d 673, 677-79 (11th Cir. 1988).  Similarly, in the context of

federal securities law, courts have stated that scienter is met when Defendant's conduct involves

"highly unreasonable omissions or misrepresentations . . . that present a danger of misleading

[customers] which is either known to the Defendant or so obvious that Defendant must have been

aware of it."  Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1201 (11th Cir. 2001).  A representation

or omission is "material" if a reasonable investor would consider it important in deciding whether

to make an investment.  See Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54

(1972); R&W Technical Servs., Ltd v. CFTC, 205 F.3d 165, 169 (5th Cir. 2000).

    In applying these elements to the present case, the Court is guided by the principle that the

Act is a remedial statute that serves the crucial purpose of "protect[ing] the innocent individual

investor – who may know little about the intricacies and complexities of the commodities market

– from being misled or deceived."  Fitzgerald & Co., 310 F.3d at 1329.  As the Fifth Circuit

explained in R&W Technical Servs., Ltd , "Congress gave the [CFTC] even greater enforcement

powers [in 1974], in part because of the fear that unscrupulous individuals were encouraging

---

[1]  Unlike a cause of action in tort for fraud under the common law of torts, "reliance" on the misrepresentations is not a requisite element in an enforcement action.  See, e.g., CFTC v. Rosenberg, 85 F.Supp.2d 424, 446 (D.N.J. 2000).

amateurs to trade in the commodities markets through fraudulent advertising." R & W Technical Servs., Ltd , 205 F.3d at 173. (citations omitted).  "*[C]aveat emptor* has no place in the realm of federal commodities fraud.  Congress, the CFTC, and the Judiciary have determined that investors must be zealously protected from deceptive statements by brokers who deal in these highly complex and inherently risky financial instruments."  Fitzgerald at 1334.

Looking to the first element of the test, the Court finds that Vandeveld made misrepresentations, misleading statements and deceptive omissions in his dealings with investors and potential investors.  Vandeveld overemphasized the profit potential and downplayed the risk of loss to investors and potential investors. He made misleading statements regarding the extraordinary rates of return investors would receive. He guaranteed investors that FxTrade would pay them monthly returns ranging between three and seven percent a month (thirty-six to eighty-four percent annually). Vandeveld deceived investors about  the existence of the SLC which purportedly made the investment risk free. Furthermore,  Vandeveld knew as early as February 22, 2004 that FxTrade had yet  to obtain a single SLC for any of his clients yet he continued to solicit investors for FxTrade. Vandeveld also failed to disclose FxTrade and Mischler's unsuccessful trading record. Furthermore, he attempted to bolster FxTrade's credibility with false statements about the company. Vandeveld told investors and potential investors that as of January 13, 2004,  FxTrade was regulated by the CFTC, had been in operation for three years and had 360 investors. In reality, FxTrade was never registered with the CFTC; had been in operation for six months; and had only nine investors during its entire operation. Relying on these fraudulent representations and omissions, Ms. Meagher, Ms. Souza, Mr. Wilson, and Mr. Ronald Vandeveld provided funds to FxTrade. Thus, the Court finds that the first element has been satisfied.

9

The Court now turns to the second element of the test to determine whether Vandeveld's fraudulent misrepresentations were committed with scienter. The plaintiff may establish scienter by demonstrating that: (1) the defendant knew his misrepresentations or omissions were false and calculated to cause harm; or (2) the defendant made the representations with a reckless disregard for their truth or falsity.  See CFTC v. Noble Metals, 67 F.3d 766, 774 (9th Cir. 1995) (providing that scienter exists when defendants act intentionally or with "careless disregard"); CFTC v. Savage, 611 F.2d 270, 283 (9th Cir. 1979) (holding that knowledge cannot be precluded by ignorance brought about by willfully or carelessly ignoring the truth).  The CFTC "need not show that defendants acted with an evil motive or an intent to injure[;] rather, recklessness is sufficient to satisfy the scienter requirement."  Rosenberg, 85 F.Supp.2d at 448 (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976)).

 As discussed previously, Vandeveld made material misrepresentations and omissions to investors and potential investors that he knew were false and would most likely cause harm. Vandeveld intentionally misrepresented information regarding the promised rates of return and FxTrade's reputation and credibility, in an effort to solicit investments. Vandeveld knew or should have known these intentional misrepresentations could cause great financial harm to investors.

Even if Vandeveld did not intentionally misrepresent information or was unaware of any fraudulent activity, he demonstrated a reckless disregard for the truth or falsity of his representations to investors and potential investors regarding FxTrade. Vandeveld did not make a reasonable effort to investigate FxTrade before he began soliciting investors. Vandeveld made no attempts to speak to any existing FxTrade customers nor did he review a single contract or monthly account statement for exiting clients. See  (Tr. 701:18-702:11.) He failed to verify the information contained in the

FxTrade brochures, which he used for solicitation. (Tr. at 704:21-06.) Vandeveld never saw any of FX Trade's of Mischler's foreign currency trading statement, FxTrade performance reports, or any documents that would verify the potential profitability of the investments. A cursory review of Mischler's and FxTrade's trading account records would have shown their limited experience. A review of their banking records would have uncovered that FxTrade never had sufficient funds to pay investors their guaranteed returns. Furthermore, Vandeveld is at least moderately sophisticated in the areas of finance and securities. He is a Certified State Planning professional and a Certified Senior Advisor engaged in the business of providing financial advice to senior citizens. (Tr. at 459:8-14; 463:21-464:5; 460:5-9.) In light of his experience, Vandeveld should have appreciated the need to research FxTrade and determine the accuracy of the guaranteed high rates of return that he promised investors and potential investors. Based on the foregoing, the Court finds that the second element, scienter, has been satisfied.

Finally, the third element of the test, whether Vandeveld's statements were material, is met. A statement is material if "it is substantially likely that a reasonable investor would consider the matter important in making an investment decision." Commodity Futures Trading Commission v. R.J. Fitzgerald & Co. Inc., 310 F.3d 1321,1328 (11th Cir. 2002). (internal quotes omitted); Commodity Futures Trading Commission v. Rosenberg, 85 F.Supp.2d 424, 447 (D.N.J. 2000). "When the language of a solicitation obscures the important distinction between the possibility of substantial profit and the probability it will be earned, it is likely to be materially misleading to customers." In re JCC, Inc., No. 89-4 [1992-1994 Transfer Binder] Comm. Fut.L.Rep. (CCH) ¶ 27, 080 at 41, 576 n. 23 (CFTC May 12, 1994). Vandeveld assured investors that they would enjoy high rates of return and no risk to their investment. Furthermore, Vandeveld misrepresented information

regarding FxTrade's reputation and credibility, including their length of operation, the number of clients and the number of assets invested with FxTrade clients and the licensing and regulation of FxTrade by the CFTC. It is evident from these facts, that Vandeveld's misrepresentations concerned salient factors in any investment decision and were therefore, material. Thus, the Court finds that the third element has been staisfied.

**C. Remedies[2]**

### 1.     Permanent Injunctive Relief

Pursuant to Section 6c of the Act, 7 U.S.C.§13a-1, the CFTC has made a showing that Defendant Vandeveld has engaged in acts and practices which violate Section 4b(a)(2)(I) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)and (iii).  To prevent Vandeveld from engaging in the same or similar activity in the future, the Court enters a permanent injunction against him enjoining him from:

(1)     engaging, directly or indirectly, in any activity that violates Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii), including, but not limited to, the following:

      a.     misrepresenting the profit potential of futures trading;

      b.     misappropriating customer funds;

      c.     misrepresenting the existence of a futures trading account;

      d.     omitting material facts necessary to make other facts disclosed not misleading to customers; and

      e.     omitting or downplaying the risks involved in futures trading.

---

[2]During the trial, Vandeveld testified that he has a seven to ten percent interest in Bahiamar, a $50 million property located in Mexico. (Tr. at 608:1-21.) Therefore, Vandeveld has sufficient assets to cover the monetary damages ordered by the Court.

(2) engaging, directly or indirectly, in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) (commodity interest), including but not limited to, the following:

  a. trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

  b. engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

  c. soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest;

  d. entering into any commodity interest transaction for his own personal account, for any account in which he as a direct or indirect interest and/or having any commodity interests traded on his behalf; and

  e. engaging in any business activities related to commodity interest trading.

(3) applying for registration or seeking exemption from registration with the CFTC in any capacity or engaging in any activity requiring registration or exemption from registration, except as provided for in CFTC Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), and acting, directly or indirectly, as a principal, officer, director, supervisor, agent or employee of any person registered, required to be registered or exempted from registration, unless such exemption is pursuant to CFTC Regulation 4.14(a)(9), 17 C.F.R.§ 4.14(a)(9).

2.      **Restitution**

The Court's authority to order restitution is ancillary to the Court's authority to order injunctive relief under Section 6c of the Act, 7 U.S.C. §13a-1. "Unless a statute . . . restricts the Court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946). The Sixth Circuit has followed these principles in granting broad equitable powers to district courts. See United States v. Universal Mgmt., Servs., Inc., 191 F.3d 750, 760-61 (6th Cir. 1999). "Restitution and disgorgement are part of the courts' traditional equitable authority." Id. at 760.

District courts have followed these same principles in allowing the CFTC to seek restitution on behalf of defrauded investors. See United Investors Group, Inc., 440 F.Supp.2d at 1359; CFTC v. Commercial Hedge Servs., Inc., 422 F.Supp.2d 1057, 1060 (D. Neb. 2006) (holding that law is well settled that court has authority to order restitution under the ancillary relief provision in 7 U.S.C. § 13a-1); CFTC v. Midland Rare Coin Exch., Inc., 71 F.Supp.2d 1257, 1264 (S.D. Fla. 1999) (holding that the CFTC may seek restitution in order to compensate victims of fraud). This Court, thus, orders Vandeveld to make full restitution to every FxTrade investors who invested funds as a result of violations of the Act by Vandeveld and the other Defendants, plus pre- and post-judgment interest. See United Investors Group, Inc., 440 F.Supp.2d at 1359-60 (determining that defendant must pay pre- and post-judgment interest on restitution award).

The amount of restitution owed is $576,000. Vandeveld is jointly and severally liable for the restitution awarded to all FxTrade investors capped at $576,00, the total amount invested by investors who relied upon Vandeveld's misrepresentations. Vandeveld used fraudulent solicitations in enticing members of the public to become FxTrade investors, and therefore, an award of

14

restitution is appropriate to compensate the victims of Vandeveld's fraud. The investors who relied upon Vandeveld's misrepresentations include: LauraLee Souza, $80,000; David Wilson, $200,000; Ronald Vandeveld, $96,000; and Georgene Meagher, $200,000. (Pl. Post-Trial Brief at n.10.)

In addition, Vandeveld is ordered to pay pre-judgment interest on the restitution amount (beginning from the date the particular investor provided funds for investment in FxTrade to the date of this Order) to be paid at the then prevailing underpayment rate established by the Internal Revenue Service pursuant to 26 U.S.C. § 6621 and post-judgment interest (which shall begin accruing on the date of this Order) to be paid at the then prevailing Treasury Bill rate pursuant to 28 U.S.C. § 1961.  All restitution payments (including all pre-judgment interest) shall be immediately due and owing as of the date of this Order.

Finally, to effect payment by Vandeveld and distribution to injured FxTrade investors, the Court appoints Daniel A. Driscoll of the National Futures Association ("NFA") (or whomever else may be selected within the NFA) as Monitor.  The Monitor shall collect restitution payments from Vandeveld, compute pro-rata allocations to injured FxTrade investors and make restitution distributions consistent with this Order.  Vandeveld shall submit restitution payments, made out to "FxTrade Restitution Fund," and sent by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order, to:

> Daniel A. Driscoll, Monitor
> National Futures Association
> 200 W. Madison Street, #1600
> Chicago, Illinois 60606-3447

under a cover letter that identifies his name and the name and docket number of the proceeding. Vandeveld shall simultaneously transmit a copy of the cover letter and the form of payment to:

Office of Cooperative Enforcement
Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre, 1155 21st Street, N.W.
Washington, D.C. 20581

The Monitor shall oversee Vandeveld's restitution obligation and shall make periodic distributions of funds to investors as appropriate. Based upon the amount of funds available, the Monitor may defer distribution until such time as he deems a distribution to be cost-efficient and otherwise appropriate. Restitution payments shall be made in an equitable fashion as determined by the Monitor to LauraLee Souza, David Wilson, Ronald Vandeveld, Georgene Meagher, and to any other FxTrade investor who was defrauded by Vandeveld in connection with the FxTrade scheme described in this Order upon sufficient proof of his or her investment in FxTrade. Omission from this order in no way limits the ability of any other FxTrade investor to seek recovery from Vandeveld or any other entity or person. Further, the restitution amount contained in this Order shall not limit the ability of any investor to prove that a greater amount is owed from Vandeveld or any other entity or person, and nothing herein shall be construed in any way to limit or abridge the rights of any investor that exist under state or common law. In addition, because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, he shall not be liable for any action or inaction arising from his appointment as Monitor, other than actions involving fraud.

### 3.      Civil Penalties

Section 6c(d)(1) of the Act, 7 U.S.C. §13a-1(d)(1), provides that "the [CFTC] may seek and the Court shall have jurisdiction to impose, on a proper showing, on any person found in the action

to have committed any violation [of the Act] a civil penalty." For the time period at issue in the case at bar, the civil monetary penalty shall be "not more than the greater of $120,000 or triple the monetary gain to such person for each such violation." CFTC Regulation 143.8(a)(1)(ii), 17 C.F.R. §143.8(1)(ii).

"In determining how extensive the fine for violations of the Act ought to be, courts and the [CFTC] have focused upon the nature of the violations." Noble Wealth Data, 90 F.Supp.2d at 694. Civil monetary penalties serve a number of purposes. Primarily, "[t]hese penalties signify the importance of particular provisions of the Act, . . . [and] remind both the recipient of the penalty and other persons subject to the Act that noncompliance carries a cost." CFTC v. Emerald Worldwide Holdings, Inc., 2005 WL 1130588 at *11 (C.D. Cal. Apr. 19, 2005) (citations omitted).

This case warrants imposition of civil monetary penalties against Defendant Vandeveld. Recognizing the gravity of the offenses; the number of misrepresentations committed by Vandeveld; and the vulnerability of the victims, the Court finds that the imposition of the penalty is meaningful and justified. See CFTC v. United Investors Group, Inc., 440 F.Supp.2d at 1361.

Vandeveld fraudulently solicited four investors and twelve potential investors. Although he made numerous fraudulent representations to each of these investors and potential investors, for purposes of assessing civil monetary penalties, this Court shall treat each deceived investor and potential investor as a single violation of Section 4bh(a)(2)(i) and (iii) of the Act. See Id. (deciding to treat defendant's dealings with each of the testifying customers as a single violation of the Act and determining that a $120,000 civil monetary penalty was a reasonable assessment for each of the five testifying costumers– for a civil monetary penalty of $600,000). Accordingly, Vandeveld shall be assessed a civil monetary penalty of $1,920,000 , which represents the imposition of $120,000

civil monetary penalty for each of the four investors and the twelve  potential investors that Vandeveld fraudulently solicited.  The civil monetary penalty assessed against Vandeveld shall be immediately due and owing as of the date of this Order.  Further, post-judgment interest, calculated in the same manner as post-judgment interest on restitution, as discussed above, shall begin accruing as of the date of this Order.

Defendant Vandeveld shall pay his civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order made payable to the Commodity Futures Trading Commission and send to:

>Commodity Futures Trading Commission
>Division of Enforcement
>Att'n: Marie Bateman–AMZ-300
>DOT/FAA/MMAC
>6500 S. MacArthur Blvd.
>Oklahoma City, Oklahoma 73169

If payment by electronic transfer is chosen, Vandeveld should contact Marie Bateman at 405-954-6569 for instructions.  Vandeveld shall accompany payment of the civil monetary penalty with a cover letter that identifies his name and the name and docket number of the proceeding.  Vandeveld shall simultaneously transmit a copy of the cover letter and the form of payment to:

>Office of Cooperative Enforcement
>Division of Enforcement
>Commodity Futures Trading Commission
>Three Lafayette Centre, 1155 21st Street, N.W.
>Washington, D.C. 20581

**4.**    **Miscellaneous Provisions**

18

**Order of Payments:**  Vandeveld's obligation to pay restitution and the civil monetary penalty are both due and owing as of the date of this Order.  Should Vandeveld, however, not be able to satisfy all these obligations at the same time, payments from Vandeveld shall first be used to satisfy his restitution obligation.  After Vandeveld's restitution obligation is satisfied fully, then Vandeveld's payments shall be applied to satisfaction of the civil monetary penalty.

**Notification of Financial Institutions:** The CFTC shall provide any financial institution which may have any assets of Vandeveld as of the date of this Order with a copy of this Order.  Within thirty (30) days of receiving a copy of this Order, each bank and financial institution affected by this Order is specifically directed to liquidate and release any and all funds held by Vandeveld in any account as of the date of the entry of this Order, whether the account is held or controlled solely  or jointly with another Defendant or by Vandeveld in any other capacity, and to convey by wire transfer to an account designated by the Monitor, any and all funds contained in those accounts, less any amounts required to cover the banks' reasonable and outstanding administrative or wire transfer fees.  The transfer of such funds represent an offset to Vandeveld's aggregate joint and several restitution obligations.  At no time during the liquidation, release and/or wire transfer of these funds pursuant to this Order shall Vandeveld be afforded and access to, or be provided with, any funds from these accounts.  Vandeveld, as well as all banks and financial institutions affected by this Order, shall cooperate fully and expeditiously with the CFTC and the Monitor in the liquidation, release, and wire of any of Vandeveld's funds.

**Equitable Relief:**  The equitable relief provisions of this Order shall be binding upon Vandeveld and any person who is acting in the capacity of agent, employee, servant, or attorney of Vandeveld, and any person acting in active concert or participation with Vandeveld, and those

equitable relief provisions that relate to restitution shall be binding on any financial institutions listed above or on any other entity holding frozen funds or assets of Vandeveld, who receives actual notice of this Order by personal service or otherwise.

**Notices:**  All notices required to be given to the CFTC or the NFA by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

> Notice to CFTC: Attention – Director of Enforcement
> Commodity Futures Trading Commission
> Division of Enforcement
> 1155 21st Street, N.W.
> Washington, D.C. 20581;
>
> Notice to NFA: Attention-Daniel Driscoll
> National Futures Association
> 200 W. Madison St., #1600
> Chicago, IL 60606-3447.

**Continuing Jurisdiction of this Court:**  This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action.

## IV. CONCLUSION

Based on the foregoing, the Court finds that 1) the Court has subject matter jurisdiction in this matter and 2)Vandeveld engaged in fraud in violation of Section 4b(a)(2)(i) and (iii) of the Commodity Exchange Act. Further, the Court orders damages including 1) a permanent trading ban against Vandeveld; 2) restitution of $576,000;  and 3) civil monetary penalties of $1,920,000.

**Judgment is entered for the Plaintiff.**

**IT IS SO ORDERED** this 27th day of September, 2007.

s/Bernice Bouie Donald
BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT JUDGE